IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICHOLAS WIGGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-0356-N |
| | § | |
| HOME DEPOT USA, INC., | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

This Order addresses Defendant Home Depot USA, Inc.'s ("Home Depot") motion for summary judgment [109]; Plaintiff Nicholas Wiggs's motion for summary judgment on Home Depot's affirmative defenses [117]; and Wiggs's motion to dismiss Home Depot's affirmative defenses [123]. For the reasons that follow, the Court grants Home Depot's motion for summary judgment. Further, the Court denies Wiggs's motion to dismiss Home Depot's affirmative defenses and motion for summary judgment.[1]

---

[1]The Court denies as largely moot Wiggs's motion to dismiss Home Depot's affirmative defenses. The Court relies on only one of Home Depot's affirmative defenses — the independent-injury rule — which was sufficiently pled. *See infra* subsection IV(A) at n.6. Further, even if it had not been properly pled, the motion to strike is untimely. *See* FED. R. CIV. P. 12(f) (providing that a motion to strike an affirmative defense must be filed within 21 days).

The Court also denies Wiggs's motion for summary judgment on Home Depot's affirmative defenses for the same reasons the Court grants summary judgment in favor of Home Depot on all of Wiggs's claims.

## I. WIGGS AND THE HOME DEPOT STORE CREDITS

The case arises from a dispute over fraudulent store credits. Plaintiff Wiggs is in the "business of purchasing store credits and then purchasing materials/products from stores like Home Depot with the store credits" for resale to his customers. Pl.'s Br. in Support of Mot. Summ. J. at 2 [118]. In December 2006, he purchased a number of Home Depot store credits — worth over $200,000 — over the internet from a man named Eric Washington. *Id.* at 5.

It is undisputed that Eric Washington obtained the Home Depot store credits through a fraudulent scheme. Washington obtained the credits by returning stolen merchandise. He first purchased merchandise for less than full price. He did this by affixing U.P.C. labels from less expensive items to more expensive items, thus paying a much lower price for the merchandise.[2] Next, he would remove lower-priced U.P.C. labels and return the merchandise to Home Depot for its full original value. Home Depot gave him merchandise credits in exchange for the stolen merchandise; he then sold the credits over the internet.

After Wiggs purchased the fraudulent store credits, he tried to use them to buy a large amount of wire from Home Depot. Wiggs ordered $39,926.34 worth of electrical wire. He paid $1,179.70 of that amount with his debit card. To "pay" for the rest of the balance, Wiggs presented merchandise credits he obtained from Washington, ostensibly worth

---

[2]This is theft under Texas law. *See generally Jahanian v. State*, 2009 WL 1493014 (Tex. App. — Houston [14th Dist.] 2009, pet. ref'd) (upholding a conviction for conspiracy to commit theft against a crime ring that switched U.P.C. labels in order to pay less than full price for merchandise).

$38.746.64. Home Depot and Wiggs memorialized this transaction in a "Special Services Customer Invoice" (the "Invoice") App. to Def.'s Mot. Summ. J. at 81–90.[3] After finalizing the Invoice but before delivering the wire, Home Depot realized that Wiggs's store credits originated from Eric Washington's scheme. App. to Pl.'s Resp. to Def.'s Mot. Summ. J. at 3. Thus, Home Depot told Wiggs that it would not deliver the wire. *Id.* Home Depot refunded the debit-card portion of Wiggs's purchase, but it refused to honor the store credits or give him cash in exchange.

Because Home Depot would not honor his store credits, Wiggs sued. He alleges four claims: breach of contract (of the Invoice), conversion (under both the common law and the Uniform Commercial Code ("U.C.C.")), tortious interference with contractual relations, and negligent misrepresentation. He seeks to recover $38,746.64 (the amount tendered in store credits) and $107,685.00 (alleged damages for lost profits). *See* Pl.'s First Am. Compl. at 11 [67]. Home Depot now moves for summary judgment as to all of Wiggs's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must

---

[3]Wiggs moves to strike the Invoice as summary judgment evidence because it is "not properly authenticated or otherwise admissible." However, Wiggs himself put the Invoice into the record in this case. *See* App. to Pl.'s Mot. Summ. J. 34–40 [119]. Accordingly, the Court finds that he waived his objection and denies his motion to strike the document from the record.

view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324. In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

### III. THE COURT GRANTS SUMMARY JUDGMENT FOR
### HOME DEPOT ON WIGGS'S BREACH-OF-CONTRACT CLAIM

The Court finds that there is no genuine issue of fact as to an essential element of Wiggs's breach-of-contract claim. Wiggs's breach-of-contract theory is that the Invoice is a valid, enforceable contract that Home Depot breached. However, he cannot demonstrate an essential element of his claim: that he performed according to the terms of the Invoice. Accordingly, the Court grants summary judgment in favor of Home Depot.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.) (emphasis omitted); *accord Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App. – Houston [1st Dist.] 1995, no writ) (citations omitted).

"To prove that it performed or tendered performance of its own contractual obligations, a plaintiff must demonstrate that it complied with the contract's provisions." *M7 Capital LLC v. Miller*, 2010 WL 1708851, at *6 (Tex. App. — Houston [14th Dist.] 2010, no pet. h.) (citing *Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex. App. — Fort Worth 1985, no writ)), *overruling* 2010 WL 1064611 (Tex. App. — Houston [14th Dist.] 1985, no writ). Wiggs's responsibility under the Invoice was to "pay Home Depot according to the terms and conditions of this Agreement." App. to Def.'s Mot. Summ. J. at 87. Thus, the Court must decide whether a genuine issue of material facts exists as to whether Wiggs's

ORDER – PAGE 5

tender of the fraudulently acquired store credits constitutes payment "according to the terms of the agreement."

There is no fact issue here.  The Invoice required Wiggs to pay a total of $39,926.34 for the wire.  He paid $1,179.70 with his debit card.  To "pay" for the rest of the balance, he presented the Washington merchandise credits.  But, as discussed below, Eric Washington had obtained the credits in exchange for stolen merchandise, meaning that they were not worth $38.746.64 and did not constitute "payment" of Wiggs's contract with Home Depot, the Invoice.

### A. Wiggs's Theory of Performance Fails Because Store Credits Are Not "Goods"

Wiggs argues that his presentation of the store credits *was* "payment."  He says that, by presenting the credits, he "tendered full performance under the contract" because he was a good faith purchaser of the store credits and thus had good title to them.  *See* Pl.'s Resp. to Mot. Summ. J. at 31.  He bases his argument on the Texas U.C.C., which provides:

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.  A person with voidable title has power to transfer a good title to a good faith purchaser for value.  When goods have been delivered under a transaction of purchase the purchaser has such power even though
>> (1) the transferor was deceived as to the identity of the purchaser, or
>> (2) the delivery was in exchange for a check which is later dishonored, or
>> (3) it was agreed that the transaction was to be a "cash sale", or
>> (4) the delivery was procured through fraud punishable as larcenous under the criminal law.

TEX. BUS. & COM. CODE ANN. § 2.403.

ORDER – PAGE 6

The problem with Wiggs's argument that he was a good faith purchaser with "good title" to the store credits is that store credits are not "goods" within the meaning of Section 2.403. The Texas U.C.C. defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action." *Id.* § 2.105. On one hand, the store credits are "movable things." Home Depot store credits are printed plastic cards that say "The Home Depot" and "Store Credit" on the front and list a number of terms and conditions on the back. *See* App. to Pl.'s Mot. Summ. J. at 14 [143].

But these store credits, as "moveable things," have no inherent value. Their value is that they represent a promise by the issuer that they may be redeemed for merchandise of a certain value. *See id.* (Home Depot store-credit exemplar).[4]  A Home Depot store-credit exemplar in the summary judgment record contains the following terms:

> You may use this Store Credit toward the purchase of merchandise or services at any Home Depot store, EXPO Design Center, or Home Depot Supply store in the United States, its possessions and territories.
> This Store Credit has no implied warranties and is not a credit card or debit card.
>
> This Store Credit is redeemable for merchandise and services only and will not be redeemed on any credit or loan account, for Tool Rental deposits or for purchases where payment is made anywhere other than a retail store location (e.g., at a customer's home, phone sales, or online purchases).

---

[4]Wiggs objects to Home Depot's reliance on store-credit exemplars because Home Depot did not properly authenticate them in the summary judgment record. However, Wiggs himself entered one such exemplar into the record in this case, *id.*, so the Court overrules his objection.

ORDER – PAGE 7

Store Credit can not be used in any Home Depot Mexico locations. You may check your card balance at any store.

Home Depot Incentives, Inc. is not responsible for lost, stolen or damages Store Credit Cards.

Home Depot Incentives, Inc., reserves the right to change these requirements.

Store Credit can not be used to purchase Home Depot store, EXPO Design Center, or Home Depot Supply Gift Cards.

*Id.* Thus, the value of the card is the promise it represents: that its holder may redeem it for Home Depot merchandise or services. It is only nominally a "moveable thing," and it does not fall within the U.C.C.'s definition of "goods."

### B. Whatever the Precise Legal Status of Merchandise Credits, Wiggs's Credits Represent an Unenforceable Promise

Neither party directs the Court to authority indicating the precise legal status of store credits.[5] One Texas court treated a merchandise credit slip as a "legal document," which is "used in a retail business to evidence store credit by which the customer could exchange the slip for cash or merchandise." *See Graham v. State*, 1999 WL 298274, at *4 (Tex. App. — Houston [14th Dist.] 1999, pet. ref'd). Various courts in other contexts have treated store

---

[5]Home Depot argues that the gift cards are "stolen property" and that Wiggs thus cannot have obtained valid title to them. *See* Def.'s Br. in Support of Mot. Summ. J. at 21 (citing *Tex. Diamond Int'l v. Tiffany & Co.*, 47 S.W.3d 589, 591 (Tex. App. — San Antonio 2001, pet. denied); *Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 216 (Tex. App. — Houston [14th Dist.] 1984, no writ); *Lee v. Robinson*, 282 S.W.2d 397, 400 (Tex. Civ. App. — Texarkana 1955, writ dism'd)). These cases are inapposite. Texas law makes clear that the *merchandise* Washington returned was stolen. *See generally Jahanian*, 2009 WL 1493014 (upholding a conviction for conspiracy to commit theft against a crime ring that switched U.P.C. labels in order to pay less than full price for merchandise). It is less clear, though, that the store credits *themselves* are stolen property. Rather, Home Depot gave them in *exchange* for stolen property. Wiggs advances an alternative theory that the credits are "negotiable instruments" under the Texas U.C.C., which is also incorrect. *See infra* subsection IV(B).

credits or gift cards as a contractual relationship between the issuer and the holder. *See, e.g.*, *United States v. Bailey*, 41 F.3d 413, 417 (9th Cir. 1994) (using "store credit" as an example of an "account," or "a contractual relationship that makes possible the provision of goods, services, or money based on payment, or the expectation of payment, at some later point in time, as described by the entry of credits and debits in a formal record" (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 50 (1984))); *Goldman v. Simon Prop. Group, Inc.*, 869 N.Y.S.2d 125, 133 (N.Y. App. Div. 2008) (holding that plaintiffs stated a claim for breach of contract, the terms of which were outlined by a stored-value gift card containing the agreement's terms); *Dawson v. Blockbuster, Inc.*, 2006 WL 1061769, at *5 (Ohio App. 2006) (holding that Blockbuster did not breach its contractual obligation under several gift cards that had expired).

Although the precise legal status of a store credit is not clear, the printed cards plainly represent a promise, or even a contractual relationship, between Home Depot and Washington. Home Depot's promise to Washington was: "You may use this Store Credit toward the purchase of merchandise or services at any Home Depot store . . . ." Thus, when Wiggs says that Washington passed good "title" to the store credits, what he means is that Washington assigned him the promised right to receive merchandise of a certain value.

However, as an assignee, Wiggs cannot enforce Home Depot's promise to Washington. It is elementary that an assignee stands in the shoes of an assignor and "obtains only the right, title, and interest of his assignor at the time of his assignment, and no more." *State Fid. Mortgage Co. v. Varner*, 740 S.W.2d 477, 480 (Tex. App. — Houston [1st Dist.]

1987, writ denied) (citing *Houchins v. Scheltz*, 590 S.W.2d 745, 751 (Tex. Civ. App. —
Houston [14th Dist.] 1979, no writ); *Carter v. Assoc. Disc. Corp.*, 550 S.W.2d 399, 401 (Tex.
Civ. App. — Amarillo 1977, no writ))); *see also Bruder v. State*, 601 S.W.2d 102, 103 (Tex.
Civ. App. — Dallas 1980, writ ref'd n.r.e.) (holding that an assignee of money used to bribe
a police officer acquired no interest in it, because "no legal right arises out of an unlawful
act").

    Washington lacked the right to enforce Home Depot's promise to him because it was
induced by fraud.  The parties cite no cases, and the Court found none, in which a party
attempted to enforce its rights under a fraudulently acquired store credit or gift card.  But it
is clear that, as a general matter, a promise induced by fraud is not enforceable.  Indeed, "one
who is induced by fraud to enter into a contract has his choice of remedies." *Dallas Farm
Mach. Co. v. Reaves*, 307 S.W.2d 233, 238–39 (Tex. 1957); *see also Gage v. Langford*, 615
S.W.2d 934, 937 (Tex. Civ. App. — Eastland 1981, writ ref'd n.r.e.).  This means he may
"rescind the contract and recover back the consideration if he has paid it, or, if he has not
paid it, he may cancel his obligations under the contract." *Gage*, 615 S.W.2d at 937 (citing
*Mason v. Peterson*, 250 S.W. 142 (Tex. Comm'n App. 1923, holding approved)).

    Thus, because Washington could not legally enforce Home Depot's promise, neither
could Wiggs, as Washington's assignee.  Home Depot, on discovering Washington's
fraudulent inducement, had the right to rescind its promise, regardless of whether
Washington or an assignee sought to enforce it.  Thus, because Home Depot was well within
its rights not to honor the store credits, they do not constitute "payment" under the Wiggs

ORDER – PAGE 10

Invoice. Accordingly, Wiggs fails to present a viable theory that he performed under the Invoice, so his breach-of-contract claim fails as a matter of law.

## IV. TORT CLAIMS

### A. Wiggs's Common Law Tort Claims Are Barred by the Independent-Injury Rule

The Court grants summary judgment in favor of Home Depot on all of Wiggs's common law tort claims, finding that they are all barred by the independent-injury rule.[6]

"The acts of a party may breach duties in tort or contract alone or simultaneously in both." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991); *see Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland GmbH*, 524 F.3d 676, 678 (5th Cir. 2008) (citing *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App. — Houston [14th Dist.] 2000, no pet.)). "The nature of the claimed injury usually determines whether the breached duty lies in tort or contract." *Exxon Mobil Corp. v. Kinder Morgan*

---

[6]Wiggs argues that Home Depot waived its independent-injury argument by not specifically pleading it in accordance with Federal Rule of Civil Procedure 8(c). The Court disagrees. First, Wiggs provides no authority indicating that the independent-injury defense must be separately pled under Rule 8(c).

Second, the Court finds that Home Depot sufficiently pled its independent-injury defense. Wiggs quotes relevant Fifth Circuit law:

> Although failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading "generally results in a waiver . . . ., [w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal."

Pl.'s Resp. to Def.'s Mot. Summ. J. at 14 (quoting *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 (5th Cir. 2001)). Home Depot did assert the independent-injury (i.e., economic-loss) doctrine in its answer. *See* Answer at 6 [103] ("Home Depot asserts that the economic-loss rule precludes any negligence claim asserted by Plaintiff."). Thus, Wiggs cannot fairly claim to have been surprised by this defense. He had notice of the defense and thus suffered no prejudice.

*Operating L.P. "A"*, 192 S.W.3d 120, 127 (Tex. App. — Houston [14th Dist.] 2006, no pet.)

(citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).   Under the

"independent injury" (or "economic loss") rule, "[w]hen the only loss or damage is to the

subject matter of the contract, the plaintiff's action is ordinarily on the contract." *DeLanney*,

809 S.W.2d at 494; *accord Exxon Mobil*, 192 S.W.3d at 127.   Further, "when the contract

spells out the parties' respective rights about a subject matter, the contract — not common

law tort theories — governs any dispute about the subject matter." *Exxon Mobil*, 192 S.W.3d

at 126–27 (citing *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999)).

The relevant question is whether "the defendant's conduct would give rise to liability

independent of the fact that a contract exists between the parties." *Id.*

Here, Wiggs's theory of contract liability is that Home Depot breached the Invoice.

All of his common law tort allegations — conversion, negligent misrepresentation, and

tortious interference with contractual relations — involve "loss or damage . . . to the subject

matter of [the Invoice]."   Accordingly, the independent-injury rule bars all three claims.

Wiggs claims two categories of damages, both sounding in contract: the loss of the

value of the wire, and alleged lost profits from both existing and future contracts.   First, the

injury as to the value of the wire is clearly the "subject matter of [the Invoice]," which "spells

out the parties' respective rights about" the wire.   Second, his alleged lost profits are also

benefit-of-the-bargain contract damages.   Lost profits are consequential damages associated

with a breach-of-contract claim.   *See, e.g.*, *W. Houston Airport Corp. v. SCI Contractors,*

*Inc.*, 1998 WL 761565, at *3 (Tex. App. — Houston [1st Dist.] 1998, pet. denied) (holding

ORDER – PAGE 12

that lost profits "pertain to the subject matter of the contract" for purposes of the independent-injury rule); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App. ― Dallas 2009, no pet.) (explaining that lost profits are benefit-of-the-bargain contract damages).  Thus, because all of Wiggs's alleged damages sound in contract, he cannot recover them in tort.

Wiggs presents various arguments that the independent-injury rule does not bar his common law tort claims.  First, he asserts various duties that Home Depot allegedly breached (e.g., a duty not to make negligent misrepresentations, or a duty based on a special relationship between the parties).  However, the Court need not consider whether Home Depot breached a duty to Wiggs independent from their contract.  Regardless of whether Home Depot owed Wiggs a separate *duty*, he cannot demonstrate an independent *injury.  See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998) ("Without deciding whether HISD breached a legal duty independent of its contractual duties, we conclude that HISD's negligent misrepresentation claim must fail for lack of any independent injury." (emphasis omitted)).  Second, Wiggs argues that "it is clear that a breach of contract claim and a conversion claim can coexist in Texas."  Pl.'s Resp. to Def.'s Mot. Summ. J. at 21.  This is true in some cases: *where there is an independent injury*.  Here, there is no independent injury and thus no independent action in tort.[7]

---

[7]Even if the independent-injury rule did not bar Wiggs's conversion claim, the conversion claim fails as a matter of law.  The elements of conversion are "(1) the plaintiff owned, had legal possession of, or was entitled to possession of, the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3)

Wiggs further argues that the independent-injury rule does not bar tortious interference claims, even where the claimed amount is also recoverable in contract.[8]  *See* Pl.'s Resp. to Mot. Summ. J. at (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (citing *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990))).  But these cases are inapposite.  It is true that the Texas Supreme Court in *American National Petroleum* held that independent-injury rule does not bar tortious interference claims simply because the measure of damages is the same as the contract *interfered with*.  798 S.W.2d at 278.  But when the mechanism of alleged interference is itself a simple breach of contract, the plaintiff's claim lies in contract.  For instance, in *Cherryhurst Properties v. Larry Latham Auctioneer's, Inc.*,

---

the defendant refused the plaintiff's demand for the return of the property."  *Lopez v. Castellano*, 2010 WL 672865, at *4 (Tex. App. — Corpus Christi 2010, no pet. h.) (citing *Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App. — Corpus Christi 2008, pet. denied)); *accord Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App. — Dallas 2009, pet. denied) (citing *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758–59 (Tex. App. — Dallas 2008, no pet.)).  Wiggs's conversion theory is that Home Depot wrongfully "seized and withheld the wire,"  Pl.'s Resp. at 21, causing a loss not only of the value of the wire, but also of profits from contracts with his customers and prospective contracts.  Wiggs cannot prove that he "owned, had legal possession of, or was entitled to possession of" the wire because he never paid for it, as required by the terms of the Invoice.

[8]Further, even if the independent-injury rule did not bar Wiggs's tortious interference claim, the tortious interference claim fails as a matter of law.  The elements of tortious interference are: "(1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage and (4) actual damage or loss occurred."  *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991) (citing *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex. 1990)).  Wiggs presents no evidence of a willful and intentional act of interference on Home Depot's part.

the plaintiff sued the defendant for breach of a contract to sell real estate. *Cherryhurst Props.*, 1998 WL 653453, at *2. The Court held that the statute of frauds barred the plaintiff's contract claim. *Id.* at *5. The plaintiff attempted to advance an alternative tortious interference claim, arguing that the defendant interfered with its prospective contractual relations by failing to sell it property as required by their contract. *Id.* at *6. The Court held that the independent-injury rule barred this claim because the "[d]efendants' conduct would give rise to liability, if any, only because defendants breached the alleged oral agreement to sell real property . . . ." *Id.* (citing *DeLanney*, 809 S.W.2d at 494). Like the alleged interference in *Cherryhurst*, the only interference Wiggs alleges is a breach of contract: Home Depot's alleged breach of the Invoice. Accordingly, the independent-injury rule bars his tortious interference claim.

### B. Wiggs's U.C.C.-Based Conversion Claim Fails as a Matter of Law

Wiggs presents an alternative conversion theory: "conversion of Plaintiff's negotiable instrument" under the Texas U.C.C. The U.C.C. defines "negotiable instrument" as an "unconditional promise or order to pay a fixed amount of money." TEX. BUS. & COMM. CODE § 3.104 (a). Wiggs's claim that the merchandise credits are negotiable instruments fails as a matter of law. They are not an "unconditional promise or order to pay a fixed amount of money." First, a store credit is a promise to furnish merchandise, not a promise to pay money. Wiggs's only response to this is that Home Depot has a policy to refund the balance of the credits in cash once the balance reaches a certain level. This internal policy is not a promise to pay, let alone an unconditional promise to pay a fixed amount of money.

ORDER – PAGE 15

Further, Wiggs presents no evidence that the store credits represent an "unconditional promise." Indeed, the credits contain various conditions and limitations. *See* App. to Pl.'s Mot. Summ. J. at 14 (listing limitations such as which Home Depot stores will honor the credit and specifying that Home Depot "reserves the right to change" the credit's terms). Thus, the store credits are not negotiable instruments, and Wiggs's claim for conversion of a negotiable instrument fails.

## CONCLUSION

The Court grants summary judgment in favor of Home Depot on Wiggs's breach-of-contract claim because Wiggs cannot prove an essential element of his claim: that he performed under the Invoice. Further, the Court grants summary judgment in favor of Home Depot on Wiggs's common law tort claims because they are barred by the independent-injury rule. Finally, the Court grants summary judgment in favor of Home Depot on Wiggs's U.C.C.-based conversion claim because the store credits at issue are not negotiable instruments.

Signed June 7, 2010.

David C. Godbey
United States District Judge

ORDER – PAGE 16